322-0524-WC Jacqueline Moore Appellant by Cameron Clark v. Illinois Workers' Compensation Comm'n City of Crest Hill Appellee by Zachary March. Thank you. Mr. Clark, you may proceed. Good morning, Your Honors. May it please the Court, Cameron Clark on behalf of the Appellant Jacqueline Moore, the widow of Charles Moore. Your Honors, before you this morning, the main case at issue deals with the alleged date of injury of February 19, 2001, and the determination by the Commission that Mr. Moore did not sustain an injury to his back on that date. As noted in the brief, the arbitrator in this matter had initially found that Mr. Moore did not sustain an accident arising out of the course of his employment on that date, and that the act of coming down from the contact tanks on the hill and misstepping on the uneven slope did not constitute a compensable accident. She further indicated that even if it did, that there was no evidence that he had injured his back in that event, and that no complaint of back pain was made for approximately three months later when he saw Dr. Karavich in May of 2001. On review, the Commission, applying McAllister, reversed the arbitrator on the issue of accident and found that the act of coming down the slope did constitute an accident under the law. Also in part, as noted in my brief, Petitioner's supervisor in this matter submitted an accident report, a supervisor's investigation report, where he actually went out to the site and identified the dangerous condition that led to the accident on that date and gave a recommendation on how that could be rectified to prevent any injuries in the future. Excuse me. I just want to make sure you address what I see as sort of an important issue, which is that you're right that those statements were made by the arbitrator that the claimant failed to show an increased risk and also that he had complained about his hip and not his back. But didn't she also say she didn't believe the accident occurred? And because according to her finding, she found the supervisor's statement that he changed his story, if you would, credible. How do we get around the finding that whatever his condition, it was not injured at work? Thank you. Thank you, Your Honor. With respect to that issue, both the arbitrator and the Commission actually noted that the respondent presented no evidence to rebut that Mr. Moore didn't injure himself coming down from the contact tank on the slope. That's irrefuted in the record before the Commission. They acknowledged the fact that respondent didn't rebut that fact. Mr. Roberts at his deposition testified that he considered Mr. Moore a trustworthy employee. He also testified with respect to the fact that if he did or didn't change his story, he was never reprimanded. He wasn't written up in any way, shape, or form by him. And again, if the supervisor didn't believe that it happened, why is he going out to that location in this huge plant? I mean, it's the water treatment plant for Crest Hill to actually view the scene of where the accident occurred, and then write up a recommendation on how to prevent it in the future. And with respect to whether or not Mr. Moore did or didn't hurt his back that day, Mr. Moore is not a doctor. We don't allow claimants to self-diagnose what their injuries are. He was sent that day to the company clinic. Dr. Munoz, the company physician, noted visible lumbar spasms. That's an objective finding. A claimant can't fake lumbar spasms. He was diagnosed with a hip sprain strain and a lumbosacral sprain strain, was prescribed narcotic medications, physical therapy, and a neurostimulator. Now, with respect to the arbitrator and the commission's finding that Mr. Moore didn't complain of back pain until May, that's completely incorrect. I mean, this record is crystal clear, black and white. February 19th, the initial medical visit on the date of injury. February 21st, March 1st, March 27th, April 10th, April 17th. All of those follow-up visits with Dr. Munoz, if you looked at the type reports, which is petitioner's exhibit number one, I believe it's in the record, it starts at C89. Note complaints of lower back pain by Mr. Moore. There's recommendations for therapy, renewed prescription medications, and the renewed neurostimulator use for both the hip and the lower lumbar conditions. Furthermore, all of the IME physicians in this case by respondent confirmed that Mr. Moore had a compensable work injury to his spine. As set forth, and again, I acknowledge that payment of benefits is not an omission of liability by a respondent, but the respondent in this case did accept this back injury case for well over a year. Respondent exhibit 24 clearly shows that they paid almost $24,000 in medical expenses all the way through November of 2002. Almost two years. It wasn't until the back surgery was recommended that they sent him to Dr. Skoletsky for the second IME, because again, the first IME, Dr. Goldberg opined that if he had continued ongoing complaints of back pain, that the surgery would be warranted. Thereafter, they sent him to Dr. Skoletsky, that was October 31st, I believe, of 02, and that's when the benefits stopped and when this case became disputed. The whole issue with the petition, excuse me, with the supervisor, Mr. Roberts, version of the facts, I would submit, you know, I was flabbergasted. He wasn't brought into this case and his deposition wasn't taken for 11 years after the accident. At no time or place did the respondent in this matter ever present that theory of Mr. Moore allegedly changing his story until 11 years. It was never presented before an arbitrator in this case, not in any of their pleadings. 11 years later, they come up with this alleged argument that he changed his story. And who was their star witness? Mr. Kaczmierski. Well, guess who they didn't show up on the day of Mr. Roberts testimony? He was supposed to be there. He wasn't there. And as I set forth in my brief, when this case was finally set for trial, by agreement of the parties, counsel for respondent at the time, and it was not Mr. March, showed up and said, oh, we finally found our witness. We need a continuance. So the arbitrator continued it for a month. We came out there, especially set in Ottawa. Well, guess who he didn't bring? Mr. Kaczmierski. And he said, we're going to go on the record and be done. Well, guess who didn't have his exhibits ready? The respondent's attorney. So we couldn't close proofs. It was continued a month later to come back and close proofs. He didn't have his credit. It got continued again. And then finally come in December, after this case was tried in September, I get posed with a detimus for the date that we're supposed to put in exhibits. And the arbitrator is in the record. She admits the detimus was not valid, but she asked me to take the deposition anyway, Mr. Kaczmierski, who they already said they were going to put. So in the arbitrator and the commission both found that unfortunately, because Mr. Kaczmierski wasn't presented for so many years after the accident, he couldn't add or add anything to the, to the testimony, whether what, what did or didn't happen that day. Well, I didn't understand his testimony, what he, and you're right. I'm not disputing what you're saying that are concerning his value, but it did seem to be clearly said, I just, he wasn't injured with. Correct. Right. I mean, his testimony, I mean, realistically, this is the gentleman who's supposed to be their star witness who they didn't present multiple times and Mr. Kaczmierski, you know, and his deposition, I point out my brief, he acknowledges. And again, this is not Mr. March. He was called numerous times by the defense counsel in this case and told not to show up. So I don't know how somebody who allegedly, according to Mr. Roberts runs in and basically Mr. Roberts testimony is he tattletales on him. Oh, that's, you know, if Chuck comes in and says he heard himself lifting the door, he didn't do it. But yet Mr. Kaczmierski doesn't remember any of this. And I mean, so again, it's, you know, he couldn't either, Mr. Kaczmierski's testimony was that he didn't come into the office to say that to Mr. Roberts. He stopped by to let Mr. Roberts know that he was going to run an error. That's his testimony. So with respect to the actual event that happened that day, Mr. Moore was clear. He testified to what the two accidents, the incidents that he occurred, lifted the door with Mr. Kaczmierski was his testimony that he then went out to the, he had some discomfort in his back. He went up to the contact tank, had that incident, and then came in notified Mr. Roberts of that. So again, with respect of the commission, I agree with them. Obviously, I think it is a compensable accident under McAllister, but the finding that he didn't, that there's nothing in the record that he complained of lower back pain is that's, it's totally correct. Again, there's six, seven plus visits, the first six or seven visits, including the date of accident, all note his lower back pain. So to find that he didn't injure his back in that, and this is a company physician diagnosing him with a back injury. I mean, if the commission wanted to say, hey, you didn't prove the or something like that, that I would understand, you know, that's a disagreement between the treating physicians and the section 12 doctor. But if to say that he didn't injure his back at all, and that there's nothing in the record until May, it's completely wrong. I mean, to me, to say that that's, that that determination is against the manifest way of the evidence is an understatement. It's, it's there. With respect to the knee case, again, as pointed out in my brief, I think the commission's finding that he, that petitioner wasn't entitled to the additional TTD up to October 13th of 04 was incorrect. That's based off of Dr. Kautsky's opinions and the records that I cited in that brief. Again, as noted by both the arbitrator and the commission, even though they denied me that additional TTD, they also noted that the respondent presented no rebuttal opinion to Dr. Kautsky's. So I don't know how you don't award the T, you disregard the treating doctor's opinions and work release statements and don't award TTD. And then the same time acknowledged that the respondent didn't present any evidence to rebut those opinions. Can I ask, the arbitrator said at page 14 of 14 that the medical records failed to relate the knee to a work injury. And at that time, as I understand it, it is a lengthy complex record that plaintiff was off work due to his back. And so, you know, seemingly that that's the reason that the failure to pay on the knee was forgiven. You were denied fees and costs, but how do we get around that? Well, again, Dr. Kautsky and Dr. Dvorsky both gave opinions that he was off of work and the one physician recommended being off indefinite period. And there was no dispute, which again, the arbitrator and the commission both acknowledged in their decisions that there was no rebuttal evidence submitted by a respondent that they ever provided Mr. Moore with the modified employment at a point in time when he was released on restrictions for that. He was never brought back to work. No physician in this matter ever released him to return to his pre-injury occupation. What was the, I think you pointed Dr. Fessler as having an opinion that the plaintiff needed to do was off work due to his knee, but Dr. Fessler was, is a spine surgeon, true? Correct. Correct. Dr. Fessler was at CINN and who had recommended the lumbar surgery in November of 02. And he does in treating him for, was that pre or post-injury? I suppose it doesn't matter, but. Yeah, I mean, basically the physicians around her at that time were correlating the fact that, you know, he's off, he's got, he was treating for both conditions at the same time. So there's going to be that overlap of work recommendations between the back and the knee. And you know what, I'm reminding myself, but correct me if I'm wrong, counsel, that it was post-surgery because if I have this correct, again, it's a complex record. The doctor was saying he can't do the back rehab because of his knee, therefore he should treat his knee. And, and he may have said something about being off work again. I'm not trying to be. That's correct, your honor. Okay. Right. And then it was, it was. I didn't, I wasn't sure it was exactly an opinion that here I am saying, you know, he needs to be off work due to the knee and off work anyway, due to the back. Correct. And then it was, I believe it was around middle of June of 04, your honor, when Dr. Kautzke had also written, completed a disability form for Mr. Moore. And that was the form that said he would not be released to return to work. And that would be for an unknown period of time. And that there was no change regarding the extent of his disability. Okay. Thank you, counsel. So, and closing on that issue, your honors, again, I believe that the commission did correctly find that he sustained a compensable injury under McAllister on that date. However, I think their ruling that he did not injure his back on that date is against the manifest way to the evidence. I think the record is clear. It, the type reports again, document the complaint, the pain, the physical examination, again, on the date of accident, you know, I acknowledge the report of injury says right hip and the work, the office intake from Dr. Munoz on that day says right hip, but if you, and LUMBO, but if you look at the typed reports, that's where it actually gets into the medical examination of Mr. Moore on those various dates that I gave, as I said, it's seven dates, the first seven visits with the company clinic physician where it's noted, he does physical exam of his spine and notes the injury sustained. Mr. Moore acknowledges that he has some improvement. It's in there. If he doesn't have a back issue, he's not going to be reporting improvement in his back pain from use of the neurostimulator and physical therapy. Mr. Clark, red light's been on. Okay. I'm sorry. Thank you. You'll have time in reply, lesser questions from the court. Any questions from Mr. Clark? Okay. Mr. March, is it? Yes. You may respond. May it please the court opposing counsel. My name is Zachary. Mr. Mr. March, you're not on the brief. What firm are you from? Gannon and Shapiro. Okay. All right. Thank you. My name is Zachary March, and I represent the defendant, Appley, the city of Cresthill. The first major issue presented to this court relates to whether the commission's finding that employee failed to establish he sustained a compensable accident to the low back on February 19th, 2001 was against the manifest weight of the evidence. And for the commission's decision to be against the manifest weight of the evidence, the opposite conclusion must be clearly apparent. Now, the commission ultimately denied accident in this claim based on its determination that employees allegation of the injury was not credible. Commission was wholly justified in making this determination. On redirect during employees testimony, he was asked on February 19th, 2001, Mr. Moore, did you advise Mr. Roberts that you had lifted the garage door? Employee responded, yes. He was then asked, did you advise him of the incident when you were walking down the slope? Once again, he responded, yes. This is just where we start with the commission's assessment of the credibility with employee admitting he provided two different accounts of how the alleged injury occurred. Mr. Roberts employees supervisor at the time testified employee initially reported he was lifting a garage door with a coworker, Mr. Kazmarski when he injured the low back. After Mr. Kazmarski informed Mr. Roberts that employee did not participate in lifting the garage door, Mr. Roberts confronted employee about this, at which time employee changed his story and reported injuring his back walking down the slope. He changed his story and reported the injury occurred during an unwitnessed incident, something that a witness could not challenge. Furthermore, on cross-examination, employee was asked, so did you report to him, referring to Mr. Roberts, what you thought, how you thought you hurt your back? And employee responded, no, I don't recall that. Obviously, this testimony is in direct contradiction to the quote I just read where he admitted to providing two separate accounts of the story. Throughout employee's testimony and throughout the medical records, there are several other instances where the employee either lied or made material misrepresentations, all of which when viewed in its entirety, support the commission's finding that employee was not credible. For instance, he testified and told his treating doctors he never received treatment to his low back prior to February 19th of 2001, nor had he ever injured his low back. Medical records clearly established not only had he sought treatment to the low back as far back as 1990, he also had a work-related injury to the low back in 1997, which he treated at the same company clinic with the same doctor, as he did on February 19th of 2001. Another example on cross, employee was asked, so what you are telling, saying to me is you did not change your story from one incident where you were lifting the door, attempting to lift the door to another accident description of you walking down the hill. Employee responded, no. So there are other examples, but to conserve time, I will just point you to my brief and move on to the next point. In contrast to employee's testimony, Mr. Roberts' testimony regarding the alleged accident date of February 19th, 2001 was consistent throughout and the commission found more credible. Mr. Roberts testified that employee provided the two differing accounts of how the injury occurred. The employee's testimony that he reported the two separate variations of the accident is consistent with Mr. Roberts' testimony. Now, clarify this for me, Mr. March, if you would, please. When the claimant went to see Mr. Roberts, he gave two instances of injury, am I correct? He initially reported the incident where he was lifting the door with Mr. Kazmarski, and then according to the testimony from Mr. Roberts, Mr. Roberts handed him accident report form to fill out. Employee went to the lavatory to fill them out. During that time, Mr. Kazmarski had entered the office. Mr. Roberts asked him, Mr. Kazmarski said, employee did not lift the door with him. It was the garbage man who lifted the door. Mr. Roberts then went to confront employee about this, and that's when employee told him that it happened when he was walking down the slope. So he no longer spoke of the garage door lifting incident, is that correct? Correct. After he was confronted with that, with the fact that Kazmarski stated he was not there with him, at that point he changed and reported the other variation of walking down the slope, which again, as I had stated, was an unwitnessed incident, that there wasn't anybody who could rebut that version. From that point forward, in terms of treatment and seeing medical providers, was there any change in the description by the claimant as to how the accident occurred? Um, I would say that they, it varies between reporting the lifting of the garage door version and then in combination with... So I'm asking pointedly, when the claimant saw a medical provider, did the garage door lifting incident, was it mentioned, was it documented thereafter? Yes, at several instances throughout. Okay, after what you, which you construe as an alleged recantation upon being confronted by Mr. Roberts, right? Yes, and going forward, he then reports both versions of the incidents to the doctors, in essence, giving him, for lack of better phrase, two bites at the apple, because if the first turns out to not be correct, he's still falling back on, well, I also had this other incident, because again, he knows that that first lifting incident was, frankly, it did not happen. It was witnessed and it did not occur. So he's providing both accounts at all times, as opposed to just one or the other. Is there any medical evidence or opinion evidence that the, uh, injury itself could not have or was only, or only could have occurred under either one of these two scenarios? Uh, not that I'm aware of. It's my understanding that, um, the doctors were under the impression that both of these happened. And again, I apologize, but I'm not aware of a specific instance of a treating doctor stating this, the lifting incident or the traversing the slope itself in isolation could have resulted in, in the condition of his low back. So there's no dispute about assuming that either one or both occurred, the nature of the injury and the condition of the claimant would have, it's logical that that would have contributed to or caused the condition. So we're not, we're not arguing that, are we? No. Um, but again, I think it comes down to the basis of the description and how the employee just was not credible to begin with. So that extends throughout, you know, there's, you have to take what he says, even to his doctors with a grain of salt, because you know that this is a gentleman who does have a propensity for changing his version of events to line up with what's best in his interest. Yeah, but his condition for which he's receiving treatment. Sure. There's no question that either one or both of the incidences, incidents could have created that. Uh, yeah, the section 12 doctors did state, uh, again, it was, the condition is causally related to an accident of February 19th, 2001. But again, they were not aware of the underlying dispute with respect to the accident. So in essence, they were assuming that an accident did occur and they were only called as their medical experts to opine on the causation aspect, which I would argue is separate from the accident, which would, I guess, preclude the causation findings. So basically as a simpleton, which I am, you're just here saying there was no accident. Yes. Okay. Thank you. And that, and that's believable that there was none because he's unbelievable. Correct. And the commission, uh, correctly found that the employee was not credible as a witness and therefore the decision on the basis of, of what on the basis of him having inconsistent testimony, uh, remembering certain specific details on direct examination that he was unable to recall on, uh, cross examination or just had a different answer. Um, and all of these in the aggregate paint the picture of an employee who is not credible. And again, I going back to the, the man, Let's go back to your, uh, opposing counsel's characterization of your star witness, Mr. Kamarski. What did he remember? So I would contend that, uh, the more important of the two witnesses would be Mr. Roberts, Mr. Kazmarski. By the time he testified, he had retired. He is, I think it was 11 or some odd year, maybe 15 years after the case, he was not involved in the incident. So he really does not have much recollection. He testifies that he knows that, uh, employee was injured on that date while working with him, but otherwise he did not have much, he could not recall much, which I think, you know, going back 17 years, anybody after, you know, to an incident that a coworker may or may not have had, you know, I think that it's reasonable that, uh, this gentleman would not have much of a recollection about the events. Um, whereas for the same period of time, Mr. Roberts did though, right? Well, Mr. Roberts also continued working, um, at city of Cresthill and, and throughout this case, um, and had as the supervisor, he was the one that was in charge of sending the reports to, um, the city of Cresthill. So he's been more involved, so to speak in this claim, which would explain why he had more of a recollection. And I believe his, uh, deposition was five years or so before Mr. Kazmarskis. Um, so it was also, you know, it was removed in time from the incident, but it was a lot closer in time compared to Mr. Kazmarskis. Thank you. Can I interrupt? Uh, you know, there's an issue about the TTD, correct? And, um, when do you contend plaintiff was returned to work post the total knee and who did it? And then I'd also follow up with, so I might as well share it now that, um, there's a note from Dr. Nikolai who says, uh, let's see, I'm not sure what date he made this note. Uh, but I have the point in the record at C410 that Dr. Nikolai was re thinking about returning him 918 to work. And I think that's the date that was adopted by. Yeah. Uh, to close up the TTD that was adopted by the commission, correct? Yeah. And you're referring to 2004. I apologize. Is it, is it Oh four? Uh, my notes say the TTD was granted between April 24 Oh three to nine 23 Oh three, but whatever the date is council, whatever the date is. And you know, you, you may know the record better than I, uh, I believe that the commission's decision to TTD at nine 23 was based on Dr. Nikolai's note saying I'm thinking about returning him, uh, nine 23. And I believe also in the initial disability form, he said he could return to work nine 23, but there's a note at C410 where Dr. Nikolai says, I will keep him off work until mid October. So I guess my question to you is ultimately, why wouldn't that be the date that the TTD now I understand he had back problems during this time and it could work anyway. And, uh, so it was perhaps difficult to analyze, but why wouldn't that be the date? So it's my understanding that, um, at that point he was at a position where Dr. Nicolette was, as you said, considering releasing him back to work. But I believe at that point, he was also being kept completely off of work for the back. So, um, the argument would be the back as an unrelated issue by finding of the accident did not occur with the low back. Uh, I believe that would be the cutoff period because at that point, moving forward, he's no longer able to return to work as a result of, uh, an unrelated or the back injury, which we found or decided was unrelated to his condition. I mean, does that make sense? Because I don't think the, the knees not, uh, contested in that way. Correct. Uh, correct. You're correct. And okay. Uh, your time is up Mr. Marsh. Are there questions from the bench? Further questions? No. Okay. Thank you, Mr. March. Thank you, Mr. Clark. You may reply. Uh, thank you, your honors. Um, with respect to, um, uh, respondents argument, uh, the records clear by Mr. Moore. He did testify to the two events, um, with regard to Mr. Robert's testimony. I understand respondents argument that Mr. Moore's history of him going out to check the contact tanks and coming down and misstepping was unwitnessed. Mr. Robert's version of the facts is unwitnessed. He acknowledged that his testimony is simply that he was sitting in his office and Mr. Kazmierski came in and pretty much by his own mission was quote tattletaling on Mr. Moore. And that's the test one. If Chuck tells you he hurt his back lifting the door, he didn't because he didn't help me. The garbage man did it. That was Mr. Robert's testimony. And again, with respect to what I do call their star witness, you know, they want to say, oh, that Mr. Moore wasn't, uh, forthright and upfront with his doctors on the version of the facts of what happened. Well, Mr. Roberts knew this on the date of accident. There is a huge incentive for the employer in this case to bring those but to the commission. And this whole version of this fairy tale that happened didn't come out until 11 years later. And Mr. Kazmierski, again, by his own admission in his deposition testified he was told numerous times by defense counsel not to show up. So there's a lot of inferences being made by the respondent in this case over the years. And my inference is going to be, they didn't want him to show up. I mean, even when granted the extension by the arbitrator. Do you mind if I, excuse me, I was going to interject this. I mean, are you saying he said I was told not to show up in that the case said, according to him, he was told the case was continued. No, he was told that the case was set for he was aware of multiple hearing dates and he was called by the, and he testified he didn't know who it was from the defense firm, but someone called him and told him not to show up. And again, to me, that's consistent. He was supposed to be there that day with Mr. Roberts. He wasn't. And the case was continued for them to bring him in because they said they had only recently found him, which again, that contradicts Mr. Kazmierski's testimony. Mr. Kazmierski testified that he had had multiple conversations for three or four months with them prior to him being called for his deposition. And when they were given that extension of time and Mr. Moore had a flight back from Florida, they didn't present them. And it was after they had the app, which is why the arbitrator wanted him to be there. So she could judge both of them at the same time because she said it would be a detriment to the petitioner to proceed to bifurcate the hearing. That's why it was continued. And that's in the record. That's in the hearing record from when we had a hearing on the Dudamus motion. And then they didn't present him when they were given that second opportunity to bring him after the case was tried. So again, with respect to the version of the two events, Mr. Moore testified to them. Again, if the conspiracy is he didn't give an accurate representation to their doctors, if they know it, why aren't they telling their doctors? And Justice Holders, to your comment regarding whether or not there's evidence in the record that he injured his back out of either of these two events, respondent wants to point to the fact that their section 12 opinions should not be given any weight because Mr. Moore wasn't honest with them. And they didn't know that neither of these events happened or he had prior treatment in 97, which was again, the problem for them with that. And they don't point out is when they did get their final section 12 exam with Dr. Bernstein, Dr. Bernstein reviewed all those records. Dr. Bernstein reviewed the 97 records, everything, and still gave the opinion that Mr. Moore sustained a work-related back injury on February 19th, 2001, and that he was an MMI. And that was in, and he specifically stated that he may have had a preexisting condition, but that the incidents on that day aggravated it. And that's an opinion, again, that's given after Mr. Robert's deposition in the case. So, you know, I would close and just ask again, that I think that this court should find that the commission was correct, that the injury is compensable under McAllister, but that the commission's finding that Mr. Moore did not injure his back that day is against the manifest way to the evidence. The Dr. Munoz's records are clear. They document the complaints of back pain, the recommendations for treatment to the back, so for the commission, and they even put it in bold, didn't injure his back. I don't know how you make that finding. Again, they could have had a disagreement with whether or not he needed the surgery or whether or not, again, real quickly, that he was the medical permanent total, which the commission found. They found for the knee, and the only reason they didn't award the medical permanent total was because they didn't think he hurt his back. Thank you. Okay, thank you, Mr. Clark. Mr. Marge, counsel, both, thank you for your arguments in this matter this morning. It will be taken under advisement and a written disposition.